UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LILLIAN ANN WEST,

      Plaintiff,

v.                                Case No.:  3:20-cv-1253-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Lillian Ann West seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.    **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income benefits on May 19, 2018, alleging disability beginning March 8, 2018. (Tr. 125, 126, 243-250). The applications were denied initially and on reconsideration. (Tr. 125, 126, 129, 130). Plaintiff requested a hearing, and on February 12, 2020, a hearing was held before Administrative Law Judge M. Hart. (Tr. 53-88). On March 13, 2020, the ALJ entered a decision finding Plaintiff not under a disability from March 8, 2018, through the date of the decision. (Tr. 31-47).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 8, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 3, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023. (Tr. 34). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 8, 2018. (Tr. 34). At step two, the ALJ found that Plaintiff had the following severe impairments:

> seizure disorder; obesity; spine disorders; diabetes mellitus; fibromyalgia; hyperlipidemia; history of migraines including ocular migraine; attention deficit disorder ("ADD"); GERD; vitamin D deficiency; depressive, bipolar and related disorders; anxiety and obsessive[-]compulsive disorders; history of schizophrenia spectrum and other psychotic disorders; history of a substance addiction disorder (drugs).

(Tr. 34). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 34).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she is limited to no climbing of ladders, ropes, or scaffolds, and occasional climbing of ramps or stairs. She is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid all exposure to the operation of a motor vehicle and hazards such as the use of moving machinery and unprotected heights. She is limited to occupations that do not require complex written or verbal communications, or frequent verbal communication. She is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work[-]related decisions and routine work[-]place changes. She is limited to no interaction with the public, and only occasional interaction with coworkers and supervisors.

(Tr. 36).

At step four, the ALJ relied on the vocational expert's testimony to find Plaintiff was capable of performing her past relevant work as a housekeeper and garment folder. (Tr. 45). The ALJ found this work did not require the performance of work-related activities that were precluded by Plaintiff's RFC. (Tr. 45). Alternatively, at step five the ALJ considered Plaintiff's age (43 years old on the alleged disability onset date), education (limited), work experience, and RFC, and found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 45-46). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) inspector, DOT 723.687-014,[1] light, SVP 2

(2) marker, DOT 209.587-034, light, SVP 2

(Tr. 46). The ALJ concluded that Plaintiff had not been under a disability from March 8, 2018, through the date of the decision. (Tr. 47).

## II.   Analysis

On appeal, Plaintiff raises two issues: (1) the Commissioner's mental residual functional capacity assessment is contrary to the opinions of two state agency examining psychologists, two other examining psychologists, and a long-time treating nurse practitioner; and (2) the Commissioner overstated the extent of Ms.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

West's daily activities and further erred in rejecting Ms. West's inability to afford specialty care under Obamacare. (Doc. 25, p. 1).

## A.    Medical Sources' Opinions

Plaintiff argues that she is far more limited from a mental perspective than the ALJ found. (Doc. 25, p. 13). Plaintiff claims that the ALJ erred in rejecting five opinions from treating and examining sources that all support more mental limitations than the ALJ included in the RFC. (Doc. 25, p. 13).

The same legal standard applies to all five of the medical sources' opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4)

specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or

restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

Plaintiff limits her arguments to her mental impairments and, as a result, the Court will focus on that aspect of the opinions as well. (Doc. 25, p. 13). Plaintiff argues that the longitudinal record shows five separate medical professionals all agree that Plaintiff was far more limited than assessed by the ALJ. (Do. 25, p. 20). Plaintiff claims that the records show Plaintiff was afraid to leave her house, had increased anxiety, was prescribed multiple dosages of psychotropic medications – not just Xanax – and was referred multiple times to mental health professionals but could not afford treatment. (Doc. 25, p. 20). And primary care provider, Tina Voisin, DNP, continually adjusted Plaintiff's medications throughout the relevant period. (Doc. 25, p. 21). Plaintiff claims that at no point did Plaintiff's condition improve to the point of being able to engage in typical daily activities. (Doc. 25, p. 20-21). Plaintiff also mainly saw the same provider, Nurse Voisin, since 2006 and developed a rapport with her even though Plaintiff had paranoia and anxiety. (Doc. 25, p. 21). But Plaintiff argues this rapport does not translate to being able to get along with

others in a work setting. (Doc. 25, p. 21). Plaintiff claims that these five opinions were consistent with each other and supported by the record.

### 1.    Tina Voisin, DNP's Opinions

Nurse Voisin began treating Plaintiff in January 2006, many years before the alleged onset date of March 8, 2018, and continued treating her during the relevant period. (Tr. 517). Plaintiff saw Nurse Voisin approximately every 3 to 6 months. (Tr. 517). Nurse Voisin treated both Plaintiff's physical and mental impairments. (Tr. 517-27). The ALJ recognized that Nurse Voisin provided a treatment regimen for Plaintiff that included medication, supplements, and supplies for management of her impairments, including her mental impairments such as paranoia, decreased focus, disorganization, decreased concentration, and anxiety. (Tr. 38). The ALJ then summarized and discussed Nurse Voisin's three opinions, a physical residual functional capacity assessment, a mental residual functional capacity assessment, and an interrogatory to treating source regarding seizures. (Tr. 39-40). The ALJ found all three opinions unpersuasive. (Tr. 39-40). Some reasons include:

- while hospital records show a Xanax withdrawal seizure around March 2018, the records do not establish a frequency and intensity of seizures that have been disabling for 12 continuous months consistent with the objective findings;

- the conservative medication regimen that has included Xanax (even though Plaintiff had a Xanax withdrawal seizure) supports an objective finding that the frequency and severity of seizures would not be disabling;

- the general consistency of Plaintiff's treatment regimen both before and since the alleged onset date, and despite the history of exacerbation with a Xanax withdrawal seizure around the time of the alleged onset date, shows satisfactory management of Plaintiff's symptoms;

- clinical and diagnostic findings do not support or demonstrate the limitations outlined by Nurse Voisin for 12 continuous months;

- Plaintiff has not required inpatient admissions for mental impairment symptoms;

- Nurse Voisin's interrogatory response stated that Plaintiff had petit mal seizures confirmed by EEG, when the records indicate the seizure activity was induced by benzodiazepine withdrawal and that the EEG and imaging of Plaintiff's head were negative;

- Plaintiff failed to follow-up with a neurologist;

- The December 27, 2019 updated statement did not indicate whether the limitations applied as of March 8, 2018, it was not supported by any diagnostic or specific objective evidence, and Plaintiff continued with a course of conservative treatment, lacking in diagnostic and objective findings consistent with disabling or work preclusive limitations for 12 continuous months since the alleged onset date.

(Tr. 38-40). Here, the ALJ listed many reasons to support her decision to find Nurse Voisin's opinions inconsistent with her own records and unsupported by medical and other evidence of record. These reasons constitute substantial evidence in support of the ALJ's determination that Nurse Voisin's opinions are unpersuasive.

## 2.    Eileen Krimsky, Ph.D.'s Opinion

Dr. Krimsky saw Plaintiff one time for an hour on June 6, 2018 for an initial evaluation. (Tr. 468-470). Dr. Krimsky could not complete the forms submitted to her as she "did not have adequate information." (Tr. 468). Instead, she provided a

two-page summary of the evaluation session. (Tr. 468). The ALJ considered Dr. Krimsky's opinion and summarized her findings. (Tr. 42).

The ALJ found Dr. Krimsky's opinion unpersuasive. (Tr. 42). She explained that Dr. Krimsky admitted she had inadequate information to complete forms, saw Plaintiff for a one-hour interview, did not have a full list of medications, provided no objective mental status findings, but gave a diagnosis from a "'brief psychiatric evaluation in the hospital.'" (Tr. 42). Thus, Dr. Krimsky's opinion was unsupported by her own notes. The ALJ also found the opinion unpersuasive "as it is based upon a brief evaluation unreflective of the claimant's functioning for 12 continuous months or more as discussed herein, and the evaluation is unsupported by referenced objective mental status findings, or treatment findings for 12 continuous months." (Tr. 42). Thus, the opinion is inconsistent with the medical and other evidence of record. The ALJ listed several reasons to support her decision to find Dr. Krimsky's opinion unpersuasive and substantial evidence supports the ALJ's decision as to Dr. Krimsky's opinion.

### 3.    Donald Freeman, M.D.'s Opinion

Plaintiff underwent an independent physical examination by Dr. Freeman on March 12, 2019. (Tr. 549-50). As part of the physical examination, Dr. Freeman completed a mental status portion. (Tr. 551). While he found Plaintiff was anxious, paranoid to sudden sounds, and had some difficulty with finding words at times, he

otherwise noted generally normal findings, such as social skills adequate, maintained eye contact, appropriate appearance, awake, alert, oriented to place, person, and time, interactive, responsive, clear speech, and able to understand and follow instructions with frequent verbal reminders or cues. (Tr. 551). Importantly, Dr. Freeman noted that Plaintiff gave only sub-maximal effort throughout the exam. (Tr. 551).

The ALJ found Dr. Freeman's assessment unpersuasive. (Tr. 42). As to the mental impairments findings, the ALJ noted that they are outside of Dr. Freeman's specialty. (Tr. 41). And the ALJ noted that Plaintiff gave sub-optimal effort throughout the examination, so Dr. Freeman could not determine Plaintiff's full abilities. (Tr. 42). Thus, Dr. Freeman's opinion is not supported based on Plaintiff's sub-optimal effort, and her mental impairments were outside his area of specialization. The ALJ's reasons in finding Dr. Freeman's opinion unpersuasive regarding Plaintiff's mental impairments are supported by substantial evidence.

### 4.    Darrin Kirkendall, Ph.D.

Plaintiff underwent a psychological consultative examination on March 13, 2019 by Dr. Kirkendall. (Tr. 562-71). The ALJ thoroughly summarized Dr. Kirkendall's findings and opinion. (Tr. 42-43).

The ALJ found Dr. Kirkendall's opinion partially persuasive for these reasons:

- Dr. Kirkendall's findings "are partially consistent with the medical evidence of record showing minimal objective abnormalities and her ongoing conservative course of treatment, including the use of Xanax."

- While Plaintiff asserts severe paranoia and ongoing seizures, she did not seek "any emergent treatment since her initial visit in March 2018 and has not had ongoing follow-up with any psychiatric specialist or neurologist. Though the claimant alleges a lack of funds to do so, she has insurance and has access to emergent treatment, and there is no evidence of the claimant seeking low or no cost treatment for her impairments and being denied such treatment, which further suggests adequate management of her symptoms with her course of treatment."

- While Dr. Kirkendall found Plaintiff unable to do more than simple tasks, "the evidence does not warrant preclusion of all work, nor marked limitations."

- "While [Plaintiff's] speech was noted as slurred and likely due to medication, she was noted to have put forth good effort. He also noted that cognitive functioning may improve if Xanax use is reduced with medication optimization."

(Tr. 43). In sum, the ALJ concluded that "this assessment is partially persuasive as generally consistent with examination findings, objective mental status findings in treatment records, and the course of treatment, which are all consistent with moderate, and no marked or extreme limitations in functioning for 12 continuous months or more. This is further consistent with the claimant's history of a substance use disorder (drugs) being established as severe but not material." (Tr. 43).

The ALJ gave many reasons why Dr. Kirkendall's opinion was partially persuasive. She found this opinion only partially supported by Dr. Kirkendall's evaluation and partially consistent with medical and other evidence of record. Thus,

the ALJ's decision to find Dr. Kirkendall's opinion only partially persuasive is supported by substantial evidence.

### 5.    Jessica B. Anderton, Psy.D.

Plaintiff's counsel referred her to Dr. Anderton for a general clinical evaluation with mental status exam to help determine Plaintiff's eligibility for disability benefits. (Tr. 43-44, 588-611). Dr. Anderton evaluated Plaintiff on August 15, 2019, and completed a Mental Residual Function Capacity Assessment and a Psychiatric Review Technique form. (Tr. 595-608, 610-11). The ALJ thoroughly summarized Dr. Anderton's reports.

The ALJ found Dr. Anderton's opinion unpersuasive. (Tr. 44). She found that treating records since the alleged onset date show generally consistent and non-disabling physical examination findings, although hospital records establish Xanax withdrawal seizures around the time of the alleged onset date. (Tr. 44). The ALJ also found that even with the Xanax withdrawal seizure, Plaintiff proceeded with a conservative medication regimen that continued to include Xanax, prescribed by her primary care physician. (Tr. 44). The ALJ noted that Plaintiff had not required recurrent inpatient admission for her mental impairments and symptoms, and the general consistency of her treatment regimen both before and since the alleged onset date show satisfactory management of symptoms. (Tr. 44). Finally, the ALJ found

that clinical and diagnostic findings do not support or demonstrate the limitations opined for 12 continuous months. (Tr. 43).

The ALJ provided many reasons why Dr. Anderton's opinion was unpersuasive. She found this opinion inconsistent with other treatment records that included a conservative medication regimen, no recurrent inpatient hospitalizations for mental impairments, and other clinical and diagnostic findings do not support the extreme limitations found by Dr. Anderton. (Tr. 43). Thus, substantial evidence supports the ALJ's decision to find Dr. Anderton's opinion unpersuasive.

While these five opinions may have some consistency with each other, the ALJ provided substantial evidence to find each opinion unpersuasive or partially unpersuasive. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). While Plaintiff cites some evidence that may support finding any or all of these opinions persuasive, Plaintiff must do more than point to evidence in the record that supports her allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). She must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* Here, when applying the correct legal standard, the ALJ listed many reasons to support her decision in finding each of these medical opinions either unpersuasive or partially persuasive. These reasons constitute substantial evidence in support of the ALJ's determination that

these five opinions are either unpersuasive or partially persuasive as shown below. Thus, the Court finds no error.

### B.   Daily Activities and Ability to Afford Specialty Care

Plaintiff asserts that the Commissioner misstated Plaintiff's daily activities by incorrectly presuming that Plaintiff helped her mother rather than her mother actually helping her. (Doc. 25, p. 22). Plaintiff also argues that the ALJ erred in faulting Plaintiff for her inability to afford specialty referrals under her insurance policy even though the record has no information about the nature of her policy, the amount of the co-pay, or whether network providers were accessible under the policy. (Doc. 25, p. 22).

Plaintiff's activities of daily living are relevant to determining her mental functioning, including her ability to concentrate, persist, and maintain pace. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021). Plaintiff claims that the ALJ incorrectly presumed that Plaintiff was helping her mother. (Doc. 25, p. 22). The ALJ found that Plaintiff lives in an apartment with her mother and son and was able "to help her mother with chores and shopping." (Tr. 35, 37). The ALJ also noted that Plaintiff helped around the house, watched movies, and helped her elderly mother. (Tr. 37). But the ALJ also acknowledged that Plaintiff's mother administers her medications. (Tr. 37). The ALJ considered Plaintiff's mother's third-party function report, in which her mother stated Plaintiff

cannot do much because of her physical and mental limitations, and needed help with dressing, washing, brushing her hair, cooking, cleaning, and medications. (Tr. 44). The ALJ found Plaintiff's mother's opinion unpersuasive based on imaging reports, objective mental status findings in treatment records, and the course of conservative treatment. (Tr. 44). The ALJ did not misconstrue Plaintiff's daily activities, properly weighed the evidence, and found Plaintiff able to help her mother at least with chores and shopping. Substantial evidence supports the ALJ's statements that Plaintiff helped her mother and, as stated above, the Court cannot reweigh the evidence. *See Mitchell*, 771 F.3d at 782.

Plaintiff also argues that the ALJ inaccurately reflected Plaintiff's ability to pay for specialty care. (Doc. 25, p. 22). Plaintiff asserts that even though she had insurance during the relevant time, her insurance did not cover specialty referrals to the extent that she could afford them. (Doc. 25, p. 22).

In evaluating a plaintiff's symptoms and their functional effect, "the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a plaintiff cannot afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d

1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff could not afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

The ALJ did not deny benefits solely based on Plaintiff non-compliance with the specialty referrals. The ALJ afforded many other reasons to deny benefits in this case. The Court thus finds no error.

### III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 1, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties